IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY KREBS AND JULIE KREBS, ADMINISTRATORS OF THE ESTATE OF DESTINEE KREBS, AND ON THEIR OWN BEHALF | : CIVIL ACTION : : : : |
| v. | : NO. 16-610 |
| NEW KENSINGTON-ARNOLD SCHOOL DISTRICT, *et al.*, | : : : |

## MEMORANDUM

**KEARNEY, J.**                                                                 **November 16, 2016**

Fourteen year old ninth grader Destinee Krebs took her life because the "pain need[ed] to end" after three years of alleged bullying, harassment and sexual harassment by schoolmates in her new school district. Her parents allege the school district's and its officials' failure to take corrective and preventive measures caused this tragic loss. The school district and its officials move to dismiss. We find her parents sufficiently plead the District allowed a hostile educational environment under Title IX and violated Section 504 of the Rehabilitation Act, the Americans with Disabilities Act and the Individuals with Disabilities Education Act. The parents do not plead the individual culpability among the school district and individual school officials necessary for civil rights liability requiring we dismiss the civil rights claims with leave to file an Amended Complaint with specificity as to each Defendant's alleged actions violating civil rights.[1]

### I.    Alleged facts.

Seventh grade student Destinee Krebs attended junior high school in the New Kensington-Arnold school district in 2012-13.[2] Destinee attended school in a different school

district before seventh grade, where she excelled academically and enjoyed her classes.[3] Over the course of her seventh grade year, Destinee endured persistent harassment and bullying at the hands of her peers. Her peers insulted her and labeled her "fat" and "ugly."[4] Destinee's grades fell from mostly A's and B's to C's, and she lost over thirty pounds.[5]

The harassment and bullying intensified during Destinee's eighth grade school year.[6] Her classmates began calling her names such as "slut," "whore," "stupid, "and "bitch."[7] Destinee began displaying self-harming behaviors, such as cutting her skin, and in October 2013, Mrs. Krebs found a note written to Destinee from a peer expressing concern about this behavior.[8] Mrs. Krebs brought this note to assistant principal Todd Kutchak.[9] Assistant principal Kutchak responded, "this was just something girls did."[10]

Destinee began seeing a therapist as the bullying and harassment progressed through the eighth grade. The therapist diagnosed her with anxiety disorder, depressive disorder, as well as her monitoring her for anorexia nervosa.[11] Destinee's teachers began noticing changes in her demeanor, a decrease in her schoolwork quality and reported these concerns to the District.[12]

In the Spring semester of Destinee's eighth grade, a female classmate threatened Destinee while they were standing outside of school.[13] Mrs. Krebs witnessed the incident and reported it to assistant principal Kutchak immediately.[14] After the meeting, assistant principal Kutchak promised Mrs. Krebs he would investigate the incident, but failed to do so, and prepared no incident report.[15]

Frustrated with a lack of response by the District, Mrs. Krebs sought help from Janet Blystone, an independent educational advocate.[16] Ms. Blystone coordinated a meeting between Mrs. Krebs, assistant principal Kutchak, and guidance counselor Tierra LaPrade-Weaver.[17]

2

After the meeting, the District instructed Destinee to document each incident of bullying or harassment and report it to assistant principal Kutchak or principal Patrick Nee.[18]

One week later, Principal Nee informed Mrs. Krebs despite their meeting, and instructing Destinee to record every occurrence of bullying and harassment, he believed these steps would likely not be enough to end the harassing conduct.[19] Destinee, however, continued to submit reports documenting the harassment over the Spring 2014 semester.[20]

Fellow students continued to target Destinee with escalating harassment and bullying during her ninth grade school year. Shortly after the school year began, a fellow student, M.M., sent a text message to Destinee, which included a picture of a bloody wrist, and in October 2014, M.M. followed up by fracturing Destinee's nose in multiple places and bruised and cut her eye while at school.[21] Mrs. Krebs reported both incidents to assistant principal Kutchak, assistant principal Jeffrey Thimons, principal Jon Banko and guidance counselor David Zamperini.[22] Assistant principal Kutchak refused Destinee's request to allow her to complete school work online and at home because "she lacked motivation" and had "failing grades."[23]

On November 12, 2014, Mrs. Krebs learned of a social media post by Destinee, which stated she hoped to "overdose" and never wake up.[24] Later in the evening, Mr. and Mrs. Krebs confronted Destinee about the post, and Destinee claimed she hoped to die.[25] She then began thrashing uncontrollably, and Mr. and Mrs. Krebs took Destinee to the emergency room.[26] After being examined in the emergency room, doctors committed Destinee to a psychiatric hospital for one week, and diagnosed her with depressive disorder, anxiety disorder and borderline anorexia nervosa.[27] Mrs. Krebs informed the District about these incidents and diagnoses.[28]

After returning to school, other students continued harassing and bullying. Destinee's ex-boyfriend, J.M., and her fellow classmates harassed Destinee when she refused to engage in

3

sexual relations with J.M.[29] The District suspended Destinee numerous times for skipping class and other infractions after her return from the hospital.[30] Over the course of the District's winter break, Destinee asked and "begged" her parents to withdraw her from school, but they ultimately did not do so relying on the District's assertions they would stop the harassment and bullying directed at Destinee.[31]

On February 4, 2015, Mrs. Krebs returned home and discovered a note written by Destinee, which stated: "the pain needs to end."[32] Concerned for Destinee's immediate well being, Mrs. Krebs contacted the police and family friends to help search for Destinee.[33] Mr. and Mrs. Krebs ultimately found Destinee in the family home's garage, where she had hanged herself earlier in the day.

## II.     Analysis

The Krebs allege five claims against the District and one claim against the school officials in their individual and official capacities.[34]

### A.     The Krebs plead the District violated Title IX.

The Krebs allege the District and its employees knew of gender based harassment targeted at Destinee, failed to enact reasonable preventive measures, and were deliberately indifferent to the gender based harassment. The Krebs allege this conduct violated Title IX by creating a hostile educational environment based on gender.

The Krebs must plead: "(1) a sexually hostile educational environment; (2) that [Plaintiffs] provided actual notice to 'an appropriate person' who had authority to take corrective measures; and (3) that the institution's response to the harassment amounted to deliberate indifference."[35] "[I]n the context of student-on-student harassment, damages are available only

4

where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect."[36]

We first look for allegations showing the existence of a sexually hostile educational environment. Destinee's harassment "must both: (1) be viewed subjectively as harassment by the victim, and (2) be objectively severe or pervasive enough that a reasonable person would agree that it is harassment."[37] The Krebs satisfy both elements. Destinee subjectively viewed the conduct by her classmates as sexually based harassment. She told her family and school officials. Destinee's ex-boyfriend, J.M. "repeatedly harassed" her after she refused to have sex.[38] Classmates harassed Destinee with names like "bitch", "whore" and "slut" and they encouraged Destinee to "go kill yourself."[39] Destinee lost significant weight, her grades declined, and she "begged" her parents to withdraw her from the District because of the harassment. A reasonable person could find this conduct to be severe or pervasive enough to rise to the level of actionable harassment. While infrequent name calling and bullying among adolescent peers at school may not always rise to the level of harassment required under Title IX, the constant and pervasive harassment with sex based terms alleged to have endured by Destinee does.

We next review whether the Krebs gave actual notice of the harassment to appropriate persons,[40] defined "under § 1682... [as] an official of the recipient entity with authority to take corrective action to end the discrimination.[41] The Krebs sufficiently plead appropriate officials had actual notice of Destinee's harassment. The Krebs allege multiple meetings, conferences, and consults with District agents relating to the harassment.[42] The Krebs did not wait until after the fact to inform the District of the offending conduct. They proactively brought the conduct to light. In an educational setting, a school principal or assistant principal is typically (absent contrary discovery) the type of "official" with an ability to take corrective action.[43] These alleged

5

facts show, with inferences in the Krebs' favor at this stage, appropriate school officials had actual notice of Destinee's classmates harassing and bullying her.

We lastly review the District's response to the notice of harassment and bullying. In an educational setting, "administrators are deemed to act with deliberate indifference 'only where the school's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'"[44] The Supreme Court in *Davis* held a school district acted deliberately indifferent when it failed to respond adequately to a student's claim of sexual harassment at school, despite knowledge of the offending conduct.[45] The Court held the failure to train its employees, or establish programs to educate school officials could be considered "clearly unreasonable in light of the known circumstances."[46]

In *Whitfield v. Notre Dame Middle Sch.*, our Court of Appeals examined a deliberate indifference claim in a school.[47] In response to race related peer harassment, a school district disciplined the offending students on multiple occasions and instituted a program to increase awareness of racial diversity.[48] Our Court of Appeals held these corrective actions were not "clearly unreasonable" because the district took proactive steps to end the harassment.[49]

Viewing alleged facts in a light most favorable to the Krebs, the District's response could constitute deliberate indifference. The Krebs allege multiple instances where they told school officials about harassment and acts of physical violence directed at Destinee.[50] School officials instructed Destinee to file reports illustrating each bullying incident which she did continuously over the course of the 2014 spring semester.[51] School officials knew Destinee received a text message image of an person slitting their wrist.[52] Later in the semester, this same student fractured Destinee's nose in multiple places and cut her eye while at school.[53]

6

Over the course of two years, the Krebs held multiple meetings and conferences with school officials, who allegedly failed to take further steps to prevent harassment, unlike the school district in *Whitfield*. Viewing the alleged facts in the light most favorable to the Krebs, they sufficiently plead a plausible claim under Title IX.

### B. The Krebs plead the District violated Section 504.

To proceed on a claim the District violated Section 504 of the Rehabilitation Act, the Krebs must allege: "1) [Destinee] is a '[disabled] individual,' 2) [Destinee] is 'otherwise qualified' for participation in the program, 3) the program receives 'federal financial assistance,' and 4) [Destinee] was 'denied the benefits of' or 'subject to discrimination' under the program."[54] Further ". . .the plaintiff must demonstrate that defendants know or should be reasonably expected to know of [the] disability."[55]

The Krebs plead sufficient facts which satisfy elements two, three, and four. The Krebs allege the District receives federal financial assistance.[56] They further allege (and Defendants do not contest) Destinee "[was] otherwise qualified for participation in the program."[57] The Krebs allege the District denied benefits of the program provided, her education, because of her multiple diagnoses, which resulted from the harassment targeted at her from peers while at school.[58]

Section 504 of the Rehabilitation Act defines an "individual with a disability" as any person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities."[59] "In establishing a Rehabilitation Act claim, a plaintiff must demonstrate that the defendants knew or should have known about the disability, but the plaintiff need not demonstrate that the defendants' discrimination was intentional."[60] Further, "[s]ection

7

504 imposes a duty on the District to identify a disabled child within a reasonable time after school officials are on notice of behavior indicating that the child has a disability."[61]

The Krebs allege Destinee's diagnoses of Anxiety Disorder, Depressive Disorder, and Anorexia Nervosa qualify her as disabled, and the District's actual knowledge and failure to find and identify her as disabled, based on these diagnoses, is a violation of Section 504.[62]

The District argues the Krebs fail to allege Destinee suffered from a disability as defined in the Rehabilitation Act. To plead a plausible claim under Section 504 of the Rehabilitation Act, the District argues the Krebs must plead sufficient facts to show Destinee suffers from a disability which impacts a major life activity. Absent a showing of disability, Defendants argue the Child Find mandate is inapplicable, as Destinee is not disabled.

The allegations include facts showing Destinee disabled as defined by Section 504 of the Rehabilitation Act, and suffered from an impairment which substantially impairs life function. The allegations taken as true show Defendants were on notice of Destinee's diagnoses of anxiety, depression, and anorexia nervosa, the harassment she suffered, and her declining grades over the course of two academic school years. Destinee's disability (her anxiety, depression, and anorexia nervosa) severely impacted a major life activity including, at a minimum, her education.

C.     The Krebs plead the District violated the ADA.

Title II of The Americans with Disabilities Act (ADA) parallels Section 504 of the Rehabilitation Act: "42 U.S.C. § 12132, which extends the nondiscrimination rule of section 504 of the Rehabilitation Act to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds)".[63] The ADA goes further in protecting individuals with disabilities by covering any public entity, not just those which receive federal funds. As a result, if the Krebs plead a Section 504 violation, the same allegations meet the ADA in this context.

As shown, the Krebs allege a plausible Section 504 violation. Because the same alleged facts may be used to show an ADA violation,[64] the Krebs sufficiently allege an ADA violation.

### D. The Krebs plead the District violated the IDEA.

The District moves to dismiss the Krebs' claim under the Individuals with Disabilities Education Act ("IDEA") arguing the Krebs cannot plead it violated the Child Find requirement and otherwise did not exhaust administrative remedies.

The Krebs plead the District violated the Child Find requirement. The Krebs allege the District violated the IDEA's Child Find requirement, also contained in Section 504 of the Rehabilitation Act. "School districts have a continuing obligation under the IDEA and § 504 to identify and evaluate all students who are reasonably suspected of having a disability under the statutes.[65]

Our Court of Appeals in *W.B. v. Matula* held "[n]either the statutes nor regulations establish a deadline by which time children who are suspected of having a qualifying disability must be identified and evaluated, but we infer a requirement that this be done within a reasonable time after school officials are on notice of behavior that is likely to indicate a disability."[66]

Between seventh and ninth grade, Destinee lost over thirty pounds, her grades declined from A's and B's to F's, and she began self-harming.[67] Mrs. Krebs informed the District, through assistant principal Todd Kutchak, of Destinee's self-harming conduct, as well as her diagnosis of Anxiety Disorder and Depressive Disorder.[68] The District further knew of Destinee's psychiatric hospitalization in the Fall semester of 2014.[69] The Krebs alerted District on multiple occasions of Destinee's multiple diagnoses and harassment at the hands of her peers. During her eighth grade year, Destinee's conduct and academic performance declined to such a degree her teachers took notice and voiced their concerns to school administrators.[70]

9

We are not persuaded by the District's argument the time period between when Mrs. Krebs signed a permission to evaluate form "on or about December 20, 2014" to her passing in February 2015 constituted a reasonable response. As alleged, the District knew or should have known Destinee likely suffered from a disability for a much longer period of time, and they should have been investigated the possibility sooner as required in *Matula*. The reasonableness time period begins when the District suspected Destinee suffered from a disability.[71] From the facts alleged, this occurred well before December 20, 2014. This is a fact issue for discovery.

We are also unpersuaded by the District's lack of exhaustion argument. The District argues the Krebs failed to address IDEA's exhaustion requirement.[72] Under 20 U.S.C. §1415(1), a plaintiff is required to exhaust all administrative remedies before suing in federal court invoking IDEA. The District argues Destinee's failure to exhaust her administrative remedies means this Court does not have jurisdiction to hear the claim, and it must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

The District ignores the futility of any administrative remedy. In narrow circumstances, exhaustion is waived where futile.[73] In *Taylor v. Altoona Area Sch. Dist.*, the court excused exhaustion where a child passed away before exhausting administrative remedies.[74] As alleged, Destinee passed in February 2015 before exhausting her administrative remedies. Exhaustion is futile given her passing, and as a result, this circumstance is one of the narrow exceptions envisioned by our Court of Appeals in *Matula* and *Taylor*. The Krebs claim does not fail as a result.

The statute of limitations to bring an administrative remedy complaint had not yet expired at the time of Destinee's passing. Our Court of Appeals in *G.L. v. Ligonier Valley Sch. Dist. Auth* held for claims brought under the IDEA: "absent one of the two statutory exceptions

found in § 1415(f)(3)(D), parents have two years from the date they knew or should have known of the violation to request a due process hearing through the filing of an administrative complaint."[75]

In October 2013, Mrs. Krebs attended a meeting with assistant principal Kutchak to discuss a note addressed to Destinee from a peer, confronting her about "cutting her skin."[76] At this same meeting, Mrs. Krebs discussed the name-calling and harassment Destinee was subjected to at school. Kutchak concluded the meeting by saying "this was just something girls did."[77] Kutchak or the District did not follow up with Destinee afterwards, or take steps to investigate further. Following this meeting, Mrs. Krebs knew or should have known the District may have violated the IDEA. The holding in *G.L* dictates the Krebs have two years from this point to file an administrative complaint. The Krebs had until October 2015 to file a complaint. Destinee passed in February 2015, before the statute of limitations ended. Any attempt to pursue an administrative remedy after Destinee's death would be futile, and falls under the narrow exceptions laid out in *Matula* and *Taylor*.[78]

### V. The Krebs fail to plead § 1983 claims with enough specificity to notify each Defendant of individual culpability.

The Krebs allege: "[v]iolation of 42 U.S.C. 1983, and the Fourteenth Amendment of the United States Constitution for the Denial of Destinee's Right to Life and her Right to the Liberty Interest in Bodily Integrity, and for the Denial of Parent's Liberty Interest in the Care of their Child."[79] The Krebs sue the District, and each named school official in both their individual and official capacities, for violating Destinee's and the Krebs' civil rights.

In ¶¶ 125-128, the Krebs allege "Defendants" "acted" or "violated" the rights of Destinee and her parents, without referencing which Defendant acted, and in what capacity they did so.

Without separately alleging the conduct of each Defendant, Defendants are not on notice of their conduct. In *Estate of Smith v. Marasco*, our Court of Appeals again confirmed plaintiffs in civil rights cases must show each individual defendant violated constitutional rights.[80] In *Folkman v. Roster Fin. LLC,* the court held "[w]hen a complaint is brought against several distinct defendants, 'separate statements with regard to each defendant are particularly helpful in apprising the individual defendants of claims pertaining only to them...'".[81] In *DeSisto College, Inc. v. Line*, the Court imposed sanctions when attorneys, in their third amended complaint, failed in "[p]leading separate counts for defendants' actions taken in their individual capacity versus those taken in their official capacity, and in failing to plead each count and the facts supporting each count separately."[82]

Every other Count in Krebs' complaint names only the District. Defining the alleged party at fault in those counts is straightforward. For their § 1983 claim, the Krebs must individually plead the actions and conduct of each named Defendant. The Krebs must also plead the District's supervisory liability and facts overcoming qualified immunity possibly afforded to the school officials.

### III. Conclusion

The Krebs sufficiently plead statutory liability under Title IX, Section 504 of the Rehabilitation Act, the ADA and the IDEA. The Krebs fail to specifically plead Defendants' liability under § 1983. Specifically, the Krebs must plead, subject to Fed. R. Civ. P. 11, the basis for claiming individual culpability of the school officials as well as the District's supervisory liability and facts overcoming qualified immunity for school officials. In the accompanying

Order, we deny the District's motion in part but grant the District's and the school officials' motion as to the § 1983 claim with leave to specifically amend.

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

[2] ECF Doc. No. 1 ¶ 24.

[3] *Id.*

[4] *Id.* at ¶ 25.

[5] *Id.* at ¶ 26.

[6] *Id.* at ¶ 30.

[7] *Id.* at ¶ 33.

[8] *Id.* at ¶ 30.

[9] *Id.* at ¶ 32.

[10] *Id.*

[11] *Id.* at ¶ 37.

[12] *Id.* at ¶ 39.

[13] *Id.* at ¶ 41.

[14] *Id.*

[15] *Id.* at ¶ 42.

[16] *Id.* at ¶ 43.

[17] *Id.*

[18] *Id.*

[19] *Id.* at ¶¶ 44-45.

[20] *Id.* at ¶ 45.

[21] *Id.* at ¶¶ 54, 57.

[22] *Id.* at ¶¶ 54-48.

[23] *Id.* at ¶ 58.

[24] *Id.* at ¶ 60. (Earlier on the same day, Destinee alleges her peers "tricked" her into snorting drugs while at school).

[25] *Id.* at ¶ 60.

[26] *Id.*

[27] *Id.* at ¶¶ 61-63.

[28] *Id.* at ¶ 64.

[29] *Id.* at ¶ 74.

[30] *Id.* at ¶¶ 71-79.

[31] *Id.* at ¶ 73.

[32] *Id.* at ¶ 80.

[33] *Id.*

[34] The named employee defendants are: Joe Banko (Junior/Senior high school principal), Todd Kutchak (Junior/Senior high school assistant principal), Jeffery Thimons (Junior/Senior high school assistant principal), David Zamperini (Junior/Senior high school guidance counselor), Tierra LaPrade-Weaver (Junior/Senior high school guidance counselor), Patrick Nee (Middle School principal).

[35] *Price ex rel. O.P. v. Scranton Sch. Dist.*, No. 11-0095, 2012 WL 37090, at *5 (M.D. Pa. Jan. 6, 2012).

[36] *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 652 (1999).

[37] *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 205 (3d Cir. 2001).

[38] ECF Doc. No. 1 ¶ 74.

[39] ECF Doc. No. 1 ¶ 40.

[40] *Price*, 2012 WL 37090, at *6.

[41] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

[42] ECF Doc. No. 1 ¶¶ 38, 40, 43, 58, 54, 58, 67.

[43] *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 360 (3d Cir. 2005) ("[a]n 'appropriate person' is 'an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the ... [district's] behalf'") (internal citations omitted).

[44] *Davis*, 526 U.S. at 648.

[45] *Id.*

[46] *Id.*

[47] 412 Fed. Appx. 517 (3d Cir. 2011).

[48] *Id.* at 519-522.

[49] *Id.* at 522.

[50] ECF Doc. No. 1 ¶¶ 32, 41, 43, 44.

[51] *Id.* at ¶¶ 42-46.

[52] *Id.* at ¶ 45.

[53] *Id.* at ¶ 47.

[54] *Nathanson v. Med. College of Pennsylvania*, 926 F.2d 1368, 1380 (3d Cir. 1991).

[55] *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*,172 F.3d 238, 253 (3d Cir. 1999).

[56] ECF Doc. No. 1 ¶ 13.

[57]*Nathanson*, 936 F.2d at 1380 (an otherwise qualified individual is defined as "one who is able to meet all of a program's requirements in spite of [the] handicap").

[58] ECF Doc. No. 1 ¶ 38.

[59] *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 496 (D.N.J. 2008); *Kralik v. Durbin*, 130 F.3d 76, 78 (3d Cir. 1997) ("[m]ajor life activities include 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working'").

[60] *Id.*

[61] *Id.* at 498.

[62] ECF Doc. No. 1 ¶ 107.

[63] *Jeremy H. by Hunter v. Mt. Lebanon Sch. Dist* , 95 F.3d 272, 279 (3d Cir. 1996).

[64] *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995) ("[a]lthough Title II of the ADA is not a re-enactment of section 504, it does extend section 504' s anti-discrimination principles to public entities. Furthermore, the legislative history of the ADA shows that Congress agreed with the coordination regulations promulgated under section 504").

[65] *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist* 585 F.3d 727, 738 (3d Cir. 2009).

[66] 67 F.3d 484, 501 (3d Cir. 1995).

[67] ECF Doc. No. 1 ¶¶ 30, 31, 56.

[68] ECF Doc. No. 1 ¶¶ 38, 31, 56.

[69] ECF Doc. No. 1 ¶ 64.

[70] ECF Doc. No. 1 ¶ 39.

[71] *Matula*, 67 F.3d at 501.

[72] ECF Doc. No. 11 ¶ 18.

[73] *Susavage v. Bucks County Schools Intermediate Unit No. 22*, No. 0-6217, 2002 WL 109615, at *19 (E.D. Pa. Jan. 22, 2002) ("IDEA's exhaustion requirement is waived where such proceedings would be futile"); *see also Matula* 67 F.3d at 496 ("there may be other very narrow exceptions permitting the exhaustion requirement to be waived . . . such as where the parents of a deceased child seek damages for a school board's failure to provide IDEA services while the child was still alive").

[74] 737 F. Supp. 2d 474, 482 (W.D. Pa. 2010) ("[t]he Court sees no reason why *Matula*'s narrow exception should not apply here. [Plaintiff] cannot obtain her desired relief through the administrative process. [Plaintiff] is therefore excused from the exhaustion requirement on grounds of futility.")

[75] 802 F.3d 601, 626 (3d Cir. 2015).

[76] ECF Doc. No. 1 ¶ 32.

[77] *Id.*

[78] *See Taylor*, 737 F.Supp.2d at 482-83.

[79] ECF Doc. No. 1.

[80] 430 F.3d 140, 151 (3d Cir. 2005).

[81] No. 05-2099, 2005 WL 2000169, at *3 (D.N.J. Aug. 16, 2005).

[82] 888 F.2d 755, 763 (11th Cir. 1989).